# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

MAY 0 4 2004

Michael N. Milby, Clerk

| | | |
|---|---|---|
| Shae Cobb Williams d/b/a | § | |
| Wayne Music Publishing Company | § | |
| **PLAINTIFF,** | § | **H. 04 -1847** |
| | § | C.A. NO. |
| vs. | § | |
| | § | (Jury Demanded) |
| Radio One of Texas, L.P., Radio One, Inc., | § | |
| Clear Channel Broadcasting f/k/a | § | |
| Clear Channel Radio, Inc. d/b/a KBXX-FM, | § | |
| Clear Channel Communications, Inc., John | § | |
| Hawkins p/k/a Lil' Jon, TVT Records, L.L.C. | § | |
| Ujaama Talent Agency, Inc. f/k/a Ujaama | § | |
| Entertainment, Inc., and Ticketmaster, L.L.C | § | |
| **DEFENDANTS.** | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, Shae Cobb Williams d/b/a Wayne Music Publishing Company (Wayne or Plaintiff), complaining of Defendants Radio One of Texas, L.P., Radio One, Inc., Clear Channel Broadcasting, Inc. f/k/a Clear Channel Radio, Inc. d/b/a KBXX-FM, Clear Channel Communications, Inc., John Hawkins p/k/a Lil' Jon, TVT Records, L.L.C., Ujaama Talent Agency, Inc. f/k/a Ujaama Entertainment, Inc., and Ticketmaster, L.L.C., and in support thereof would show the Court as follows:

### I. PARTIES

1.      Plaintiff is an individual who resides in Harris County, Texas.

2.     Defendant Radio One of Texas, L.P, is a Delaware Limited Partnership and which regularly conducts business in Harris County, Texas and may be served with process by serving Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

3.     Defendant Radio One, Inc., is a Delaware corporation doing business in Texas with its principal place of business at 5900 Princess Garden Parkway, Lanham, Maryland 20706 and may be served with process by serving the Texas Secretary of State at P.O. Box 13697, Austin, Texas 78711.

4.     Defendant Clear Channel Broadcasting, Inc., on information and belief, is the successor to Clear Channel Radio, Inc. d/b/a KBXX-FM, is a Nevada corporation and may be served with process by serving Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

5.     Defendant Clear Channel Communications, Inc., is a Texas corporation and may served with process by serving Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company at 701 Brazos Street, Suite 1050, Austin, Texas 78701.

6.     Defendant John Hawkins p/k/a Lil' Jon, is an entertainer who has done business in the State of Texas and may be served at TVT Records, 23 East 4th Street, 3rd Floor, New York, N.Y. 10003.

7.     Defendant TVT Records, L.L.C. is a New York Limited Liability Company that does business in the State of Texas and may be served through Corporation Service Company, 80 State Street, Albany, NY 12207-2543.

8.     Defendant Ujaama Talent Agency, Inc., on information and belief, is the successor to Ujaama Entertainment, Inc., and is a New York corporation with its principal place of business at

0025

501 Seventh Avenue, New York, NY 10001 and may be served through The New York Department of State, Corporations Division, 41 State Street, Albany, New York 12231-0001.

9.     Ticketmaster, LLC is a Limited Liability Company doing business in Texas and may be served with process at Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company at 701 Brazos Street, Suite 1050, Austin Texas 78701.

## II. VENUE

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims alleged herein occurred in this Judicial District.

## III. JURISDICTION

11.     This Court has jurisdiction over the causes of action alleged by Plaintiffs pursuant to 28 U.S.C. § 1331, for various violations of United States antitrust laws, and 28 U.S.C. § 1332, based on the diversity of citizenship between the Plaintiff and various defendants.

12.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367 (a).

## IV. BACKGROUND FACTS

13.     During the first session of the 78th Legislature of the State of Texas, several state legislators recommended that the Museum of American Music History (MAMH) work with the Elections Division of the Office of the Texas Secretary of State (Elections Division) to develop voter education and registration campaigns in Harris County. The objective was to combine the appeal of music with civic awareness to help inspire voter participation among the disadvantaged and disenfranchised 18-35 year old target market.

14.     MAMH solicited the services of Justice & Justice (J&J), a governmental program development consultant firm, to assist its affiliate, the Arnett Cobb Texas Music Foundation (ACTMF), in working with the Elections Division to develop potential programs with

0024

appropriate project parameters. All parties found that the voting public received special privileges (the right to participate in elections and to serve as jurors) where cards and certificates identified the group. These inherent rights had not been marketed as privileges, such that market development strategies could be implemented. Through validation documents, the voting public could be designated as an elite members-only group where membership privileges would be expanded. Uniquely, the voter card and voter registration certificate would be used much like a Student ID with similar targeted group privileges. Texas Secretary of State, Election Division counsel Paul Miles, approved the approach and plan pursuant to existing election laws and voter registration rules.

15.     On or about May 20th 2003, J&J and ACTMF solicited the services of Wayne Music Publishing Company (Wayne) to research and advise the groups on music genres and program development perspectives that would appeal to the 18-35 year old target market. The Wayne report identified that Hip-Hop, Rock and Neo-soul music genres were the most appealing music forms and that artist endorsements, performances, music conferences and record company support would create environments that would foster market development, program identity and public participation. Based in Houston Texas, Wayne is one of the oldest international music publishing and production firms in the United States.

16.     MAMH initiated the "GOTV Hip-Hop Rock Alliance™" project as a non-profit sponsoring entity to facilitate and foster a statewide voter education, music program. Wayne initiated meetings with the Harris County Voter Registration Office and Harris County Clerk's Office for round-table discussions in developing the program. Those meetings produced program parameters, support, sanctioning and name use dynamics for a unique voter education, registration and participation program for Harris County. Out of those meetings Crunk-The-

0023

Vote$^{TM}$ was formed as an adjunct project with the Harris County, Harris Votes! Program. Under the common law, ACTMF gained title and rights to the name "Crunk-The-Vote$^{TM}$", and Wayne gained title and rights to the names "GOTV *CrunkFest*$^{TM}$" and "*CrunkFest*$^{TM}$". Subsequently all titles were registered with the Harris County Clerk's Office.

17.     Throughout June and July 2003, Wayne researched, planned and organized the "2003-2004 Crunk-The-Vote" program following the Texas Secretary of State, Harris County, MAMH and ACTMF mandates. Wayne registered over 20 voter registration deputies, planned a comprehensive marketing campaign, developed market strategies and coordinated a dynamic Harris County program kick-off. Wayne owner, Shae Cobb Williams, occasionally with ACTMF, arranged and eventually contracted the services of Ujaama Entertainment, Inc. (artist bookings), Ticket Master, L.L.C. (event ticketing), KBXX-FM (radio advertising and promotions), and others.

18.     On July 1, 2003, ACTMF contracted with Wayne to a "Production Services Agreement" to plan, develop, coordinate and produce community programs that would combine the music industry's force with civic awareness through multi-cultural performing arts, singer/songwriter profiles, music conferences and general entertainment events. The official kick-off for the Crunk-The-Vote program was scheduled for August 24, 2003 at Texas Southern University's H&PE Arena (Arena), and was billed as the "2003 GOTV *CrunkFest*" (*CrunkFest*) featuring national Hip-Hop artists Lil' Jon and the Eastside Boyz (Lil' Jon), Ying Yang Twins, Chingy, David Banner, TI, Field Mobb, and Killer Mike. The lineup was one of the most popular, cross-cultural entourages of Hip-Hop entertainers in the country and was then currently touring as the "Dirty South Mix Tape Tour". Defendant Lil' Jon was the headliner for the *CrunkFest* and is signed to Defendant TVT Records, L.L.C (TVT).

19.    From June 15, 2003 through August 24, 2003, Wayne negotiated, executed and debated

terms of contracts with Ujaama Entertainment, Inc., the predecessor to Defendant Ujaama Talent

Agency, Inc. (Ujaama). On July 3, 2003 Wayne executed contracts by Ujaama via e-mail, fax,

and phone and began wire-transferring deposits for all of the artists in the Dirty South Mix Tape

Tour. Wayne had negotiated with Ujaama that the artists agreed to endorse the program and

participate in the Crunk-The-Vote event with radio versions of their songs, for the terms and

conditions contained in the contracts. Defendant Lil' Jon, Ying Yang Twins, Chingy, David

Banner, T.I., Field Mob, and Killer Mike executed separate and individual contracts. Before

signing the original contracts, Ujaama agreed to revise each to include a 30day/100mile radius

"Exclusivity Clause" to the benefit of Wayne. Shortly thereafter, Ujaama informed Wayne of

cancellations relative to the planned and contracted artists, specifically T.I. and David Banner

and that the lineup was subject to change. Also, Ujaama failed to provide vital promotional

information and materials (i.e. press kits, promotional CDs, photographs, etc.), which prompted

Wayne to purchase artists CDs for promotions and radio spots and make its own flyers from

album covers.

20.    Thereafter, Wayne began a verification process of the artists on tour, through previously

scheduled dates, and found that many of the artists were canceling with other promoters,

indiscriminately. Wayne found that several of the artists would leave the tour to play isolated

dates with other nationally known hip-hop artists. Nevertheless, Wayne cautiously sent deposit

balances based on individual verifications that each contracted artist would appear for the August

24th Crunk-The-Vote event.

21.    On or about July 10th 2003, Wayne and ACTMF contracted with Defendant Ticket

Master, L.L.C. (TM) to serve as the exclusive, authorized computerized ticketing agent for the

August 24th 2003 GOTV *CrunkFest*. Wayne paid TM $1,500 and other fees for an annual service contract. TM agreed to provide a venue-seating chart, ticket distribution in all 58 TM outlets, internet and phone sale services and printed tickets for the box office. Because of an outdated Arena seating chart at TM, Wayne had to physically count and verify every seat in the Arena and provide TM with an accurate seating chart. TM representative, Eva McMerrill, assured Wayne that *CrunkFest* tickets, utilizing the updated chart, would be placed on the TM system by July 18th, and that TM would provide accurate sales audits for the *CrunkFest* event. In addition, TM would provide Wayne an actual, daily sales report of all ticket activity for the event. However, Crunk-The-Vote deputies found that TM never placed the updated seating chart on the TM system and that TM had constantly reported false and inaccurate sales totals in their daily reports to Wayne.

22.     On or about July 14th, 2003 Wayne contracted with KBXX-FM (known as 97.9 The Box), through its Account Associate Bernard Lee, to air radio advertisements, promotions and specials for the August 24th Crunk-The-Vote event. KBXX-FM is an assumed name for Defendant Clear Channel Broadcasting, Inc.'s predecessor Clear Channel Radio, Inc. (CC Broadcasting), and was previously owned by Defendant Clear Channel Communications, Inc. (CC Communications). KBXX-FM's Texas Sales and Use Tax permit is held by Defendant Radio One of Texas, L.P., and its call letters are owned by Defendant Radio One, Inc. (collectively Radio One) (hereinafter references to KBXX-FM will include CC Broadcasting and Radio One). Over a thirty-five day period, Wayne paid KBXX-FM $10,000 dollars (cash) in advertising and promotion fees for the 2003 GOTV *CrunkFest* featuring artists Defendant Lil' Jon, the Ying Yang Twins, Chingy, David Banner, T.I., Field Mobb and Killer Mike. From the start KBXX-FM placed *CrunkFest* advertisements in obscure times on the radio station and

throughout the thirty-five day period failed to run agreed promotions (Box Weekend Special). In addition, KBXX-FM failed to substantiate its airing of *CrunkFest* advertisements with notarized station affidavits and has failed to provide reports of and other rate scales for similar events.

23.    On Thursday August 14th, KBXX-FM began advertisements and promotions for a contrived concert named "HoodFest '03: The Love of Hip-Hop Tour" (*HoodFest*) (an assumed name for Laura Friedman) scheduled for September 21, 2003. The *HoodFest* event had been arranged by KBXX-FM to include *CrunkFest* headliners, Defendant Lil' Jon and also the Ying Yang Twins, among others. The Thursday (August 14th) advertisements were followed on Friday (the 15th) with a full, exclusive *HoodFest* weekend promotion. In that promotion, KBXX-FM directed all of their listeners to the "97.9 The Box" web site for $9.79 tickets to the *HoodFest* event. During the *HoodFest* weekend promotion, KBXX-FM did not run any *CrunkFest* advertisements or promotions as agreed and the Account Associate would not address the KBXX-FM contract breach.

24.    Wayne immediately contacted Defendant Ujaama, the artists' record labels and managers to address the issue. Wayne, Defendant Ujaama and Defendant TVT (record label for Defendant Lil' Jon and also the Ying Yang Twins) tried feverishly to contact KBXX-FM over the weekend, but were unable to reach the station's administration until Monday, August 18, 2003. They informed KBXX-FM that their advertising of *CrunkFest* artists violated Wayne's contracts exclusive clause and issued the station formal cease-and-desist notices. MAMH's GOTV Administrator, Steve Williams, also contacted the station and had extensive conversations with KBXX-FM's General Manager, Program Director, Sales Director, and Promotions Director. The General Manager, Mark McMillan (McMillan), guaranteed all parties that the *HoodFest* promotion would stop immediately and assured Steve Williams that the *CrunkFest* program

0019

would take top priority at the station. Thereafter, McMillan had his Program Director, Tom Calococci, Sales Director, Brenda Ford-Jones and Promotions Director; Natalie Jones contact Mr. Williams with an advertising and promotion "Station Banner" plan that would run from Tuesday, August 19th through Sunday, August 24th, culminating with a Crunk-The-Vote weekend special promotion.

25.     Despite being fully advised of the "Exclusivity Clause" in the Wayne contracts and after receiving formal cease-and-desist notices, KBXX-FM covertly and maliciously continued to promote the *HoodFest* concert, with *CrunkFest* headliner Defendant Lil' Jon, and other *CrunkFest* artists. Through the KBXX-FM web site, TM web site, TM outlets and BOX Street Team promotions, KBXX-FM advertised and promoted the *HoodFest* event through August 24, 2003.

26.     On information and belief, at the behest of Defendants CC Communications and KBXX-FM and contrary to notice of Wayne's "Exclusivity Clause" with artists, Defendant TM placed tickets for *CrunkFest* artists under the *HoodFest* concert on its internet sales system on August 21st, 2003. TM outlet distribution and phone sales for a *HoodFest* concert with *CrunkFest* artists began on August 23rd at all TM outlets, the day before the *CrunkFest*. TM's collusion in the KBXX-FM and *HoodFest* scheme confused the market and completely undermined *CrunkFest* success by offering the same artists at two different purchase rate structures. KBXX-FM's *HoodFest*, with *CrunkFest* artists, sold tickets for $9.79 and $12.00, while *CrunkFest* tickets for the same artists ranged from $20.00 to $45.00. As a result, all *CrunkFest* ticket sales immediately ceased.

27.     Further, KBXX-FM had its Account Associate, Bernard Lee, solicit a local nightclub called "Club Sempers" to host a meet-and-greet with Defendant Lil' Jon and the Ying Yang

0018

Twins on the evening of the *CrunkFest*, August 24th. KBXX-FM produced "after party" advertisements and promotions, stopped all *CrunkFest* advertisements, and substituted the Sempers "after party" promotions during the entire, agreed upon Crunk-The-Vote weekend (August 22nd through the 24th). Maliciously and knowingly, KBXX-FM and Sempers produced and promoted the meet-and-greet as the "Official *CrunkFest* After Party" and arranged advertisements to air on KBXX-FM and Party 104.9-FM with street team promotions throughout Houston. The Sempers "after party" promotions included all of the artists exclusively contracted with Wayne and utilized the trademark of the Crunk-The-Vote program and Wayne.

28.     Wayne, through its GOTV Administrator, Steve Williams, immediately contacted Ujaama and the Dirty South Mix Tape Tour manager, Robert Mitchell, to advise them of the blatant breach of contract. On the morning of August 24th, at approximately 2am, Robert Mitchell called Steve Williams to advise him that KBXX-FM had demanded that he have Wayne waive the "Exclusivity Clause" in all artist contracts. Additionally, the artists were not going to appear for the *CrunkFest* program unless they all received full payment of their contracted fees at least two hours prior to the event's scheduled start time, in cash, at the hotel accommodations provided by Wayne. These demands further violated the terms of the artist contracts with Wayne.

29.     Subsequently, Wayne refused to restructure the existing agreements and stipulated that all parties adhere to the current contracts, artist appear as scheduled, and any and all actual and perceived damages be placed in a joint law suit against KBXX-FM, if necessary. The tour manager informed Mr. Williams that any participation in a lawsuit against KBXX-FM would result in a national Radio One "no airplay" status for the artists and refused to participate in the *CrunkFest* event. Wayne and ACTMF were forced to reschedule the event, sustain actual damages of over $100,000 dollars, lost revenues of over $240,000.00 and suffer slander and

0017

humiliation by KBXX-FM staff, artists, and industry associates perpetuated from the sabotaged kick-off campaign. With the artists consequently bowing to KBXX-FM demands, attempting to renegotiate contract terms, and subsequently not showing for the August 24th *CrunkFest* event, Wayne forwarded a formal demand to Defendant Ujaama to refund $16,250 of deposits that had been sent via wire-transfer. To date, Ujaama and the artists have absconded with the deposits paid by Wayne.

30.     KBXX-FM and CC Communications didn't stop there. Since August 2003, KBXX-FM has been maliciously undermining Crunk-The-Vote programs in the Houston market by monitoring, slandering and frustrating efforts to schedule national artists for campaigns and other planned events. While Wayne worked to reschedule original *CrunkFest* artists, KBXX-FM used its FCC license and airplay advantage to arrange promotional events with the same artists to further undermine Wayne. In addition, while Crunk-The-Vote negotiated with the Hip-Hop Summit Action Network (HSAN) for partnership participation in planned Houston events, CC Communications and KBXX-FM developed a "radio banner" partnership with HSAN and continued to slander Wayne, Crunk-The-Vote and Shae Cobb Williams to further undermine planned Wayne programs. Wayne no longer has a viable relationship with HSAN because CC Communications and KBXX-FM have supplanted Wayne as the promoter for HSAN sanctioned voter registration programs.

## V. ANTITRUST VIOLATIONS

### *CLAIM ONE*

31.     Based upon and incorporating the facts above, KBXX-FM and CC Communications violated antitrust regulations under the Sherman Act, 15 USC 1.

32.     On August 15, 2000 the Federal Communications Commission (FCC) approved the merger of Defendant CC Communications and AMFM, Inc. As part of its purchase of AMFM,

0016

Inc. CC Communications was ordered by the FCC to divest itself of KBXX-FM and over one hundred other radio stations to either a third party buyer or to an insulated trust. The approval of the merger was conditioned on the divestiture or the assignment to the trust of the radio stations. The divestiture order was rendered to satisfy the FCC's local radio ownership and radio-television cross-ownership rules, and to address the concerns of the FCC and the Department of Justice (DOJ) about the impact on competition.

33.    On Information and belief, CC Communications has circumvented that divestiture order by either creating other companies, holding controlling interests in other companies, or exercising control over other companies through whom it continues to do business as KBXX-FM, among others.  The effect of that circumvention is that CC Communications has stifled competition by acting through KBXX-FM and undermining non-KBXX-FM events through its ability to under price any competitor.

34.    CC Communications and KBXX-FM have monopolized the market on Hip-Hop music events in the Houston area by utilizing an unfair pricing scheme to eliminate fair competition by competitors. In furtherance of their scheme, CC Communications and KBXX-FM eliminated competition by Wayne's *CrunkFest* by sponsoring and promoting an event similar to *CrunkFest* with much of the same artists at a significantly lower price and scheduled only one month after *CrunkFest*.  Specifically, after obtaining pricing information for *CrunkFest* through its advertisement contract with Wayne, KBXX-FM then began to promote *HoodFest* for only $9.79 - $12.00, which was approximately $30 less than the average ticket price of *CrunkFest*.  The effect of this unfair pricing scheme was to cause tickets sales of *CrunkFest* to cease.

35.    The unfair pricing scheme was used to bolster sales of *HoodFest* to the detriment of *CrunkFest* because, on information and belief, KBXX-FM had a conflicting financial interest in

0015

*HoodFest*. KBXX-FM was thus both the advertising source for and a promoter of *HoodFest* with a direct pecuniary interest in its success. Such actions caused substantial damages to Wayne and were done in violation of 15 USC 1.

*CLAIM TWO*

36. Based upon and incorporating the facts and claims above, from July 14, 2003 through September 21, 2003, and continuing thereafter CC Communications (through KBXX-FM), KBXX-FM, and TVT are engaging in an unlawful combination and conspiracy in restraint of the hereinabove described interstate trade and commerce in the Houston entertainment/concert promotion market in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

37. The aforesaid combination and conspiracy consists of a continuing agreement, understanding and concert of action among CC Communications (through KBXX-FM), KBXX-FM and TVT, the substantial terms of which are:

   a)   TVT enters into a promotional agreement with KBXX-FM to ensure the performance of Lil' John and Ying Yang Twins at *HoodFest* '03: "For the Love of Hip Hop" Tour held in Houston, Texas on September 21, 2003.

   b)   TVT agrees to have Lil' John and Ying Yang Twins perform under the guise of a promotional event at no cost to KBXX-FM;

   c)   In exchange for the Lil' John and Ying Yang Twins, KBXX-FM would promote and provide heavy rotation radio-air play for both groups signed to TVT (Lil' John and Ying Yang Twins).

   d)   On information and belief, KBXX-FM and TVT conspired to allow KBXX-FM to refrain from avidly promoting events in which Lil' John and Ying Yang Twins were headliners outside of *HoodFest*.

0014

38.    Pursuant to and in effectuation of the aforesaid combination and conspiracy, KBXX-FM and TVT did those things which, as hereinabove alleged, they combined and conspired to do.

39.    The aforesaid combination and conspiracy has had the following effects, among others:

    a)    Competition between KBXX-FM and any advertiser, including Wayne, who wishes to advertise competing events against KBXX-FM events, has been eliminated.

    b)    Wayne has been foreclosed from entering the market for hip-hop event/concert promotions;

    c)    Local entities and individuals, whether concert promoters or civic organizations focused on raising voter awareness, have been deprived of the benefits of competition in the advertising of events where, in addition to being the major advertiser outlet, KBXX-FM has also positioned itself to be the exclusive local promoter.

    d)    Competition in the promotion, production and advertising of concert events has been suppressed and eliminated.

    e)    On information and belief, CC Communications and KBXX-FM profit from the illegal combination and conspiracy to the detriment of others who desire to enter the market.

*CLAIM THREE*

40.    Based upon and incorporating the facts and claims above, on information and belief, CC Communications (through KBXX-FM), KBXX-FM and TVT conspired to restraint trade by having an exclusivity agreement whereby no one but KBXX-FM has the ability to promote TVT artists in the Houston, Texas area.

13
0014

41.    An artist signed to a record label normally does not perform at concerts free of charge, unless it is a requirement of the record label and approved by the artist's booking agency. On information and belief, TVT allows artists to appear at no cost or low cost for KBXX-FM. Talent in the entertainment/concert market is in low supply and great demand such that scheduled performances are major revenue events, both for the artist and the advertisers. On information and belief, TVT has agreed to supply KBXX-FM with artist performances under the guise of fictitiously orchestrated promotional events.

42.    On information and belief, KBXX-FM and TVT have entered into and are currently operating under an exclusive supply arrangement whereby TVT has agreed to release its artists to perform promotional shows exclusively for KBXX-FM in the Houston, Texas area. Said exclusive agreement was entered into for the purpose and with the intent of injuring Wayne and others and depriving them of an opportunity to enter into or conduct business in the entertainment/concert market.

43.    The implementation of the exclusive agreement between KBXX-FM and TVT has injured Wayne by depriving it of an opportunity to adequately market, advertise, and promote its *CrunkFest* and other such future events in the entertainment/concert market. As a result, CC Communications and KBXX-FM profit from the exclusive agreement to the detriment of others who desire to enter the market.

44.    The exclusive arrangement between CC Communications (through KBXX-FM), KBXX-FM and TVT constitutes an unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1) and is also an agreement which substantially lessens competition or tends to create a monopoly in the promotional entertainment/concert market in violation of Section 3 of the Clayton Act , 15 U.S.C. § 14.

0012

## CLAIM FOUR

45.   Based upon and incorporating the facts and claims above, Defendants CC Communications (through KBXX-FM), KBXX-FM and TVT engaged in discriminatory pricing.

46.   In order to induce Defendant Lil' Jon, Ying Yang Twins, and TVT to circumvent its agreement with Wayne and to enter into the specious performance agreement with KBXX-FM, on information and belief, Lil' Jon, Ying Yang Twins and TVT were informed that failure to perform would result in a national Radio One, Inc. "no airplay" status for the artists.

47.   Pursuant to the promotional agreement with TVT, KBXX-FM was allowed to sell tickets for a concert at prices significantly lower than those charged by promoters or entities who have to use booking agencies for Lil' Jon performances.  No other promoter or entity could viably charge such low prices for performances by artists of the caliber of Defendant Lil' Jon and the other artists appearing at *HoodFest*.  The effect of such price discrimination lessens competition and creates a monopoly in the entertainment/concert market in violation of Section 2(a) of the Robinson-Patman Act (15 U.S.C. § 13(a)).

48.   Furthermore, KBXX-FM's and TVT's discriminatory pricing as evidenced by the *HoodFest* event has foreclosed Wayne from entry into the Hip-Hop concert market and has caused CC Communications, KBXX-FM and TVT to profit from the discriminatory pricing and increased radio air play for TVT artists.

## VI. DECEPTIVE TRADE

49.   Based upon and incorporating the facts and claims above, KBXX-FM engaged in certain false, misleading and deceptive acts, practices and/or omissions actionable under the Texas Deceptive Trade Practices - Consumer Protection Act (Texas Business and Commerce Code,

0011

Chapter 17.41, et seq.), as alleged herein below.

50.   KBXX-FM violated Section 17.46(b) of the Texas Business and Commerce Code, in that KBXX-FM:

(a)   caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of its services related to advertising *CrunkFest* for Wayne;

(b)   caused confusion or misunderstanding as to affiliation, connection, or association with, or certification by another because it failed to inform Wayne that, on information and belief, it had a conflicting financial interest in *HoodFest*;

(c)   represented that services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they did not have when it induced Wayne to believe that advertisements and promotions for *CrunkFest* would be a top priority; and

(d)   represented that services have been performed when the services were not performed regarding its advertisements and promotions of *CrunkFest*.

51.   Wayne would show that the acts, practices and/or omissions complained of were the producing cause of Wayne 's damages more fully described herein below.

52.   Wayne would further show the acts, practices and/or omissions complained of under Section 17.46(b) of the Texas Business and Commerce Code were relied upon by Wayne to Wayne s detriment.

53.   Wayne would show that the false, misleading and deceptive acts, practices and/or omissions complained of herein were committed "knowingly" in that KBXX-FM had actual awareness of the falsity, deception, or unfairness of such acts, practices, and/or omissions.

54.   Wayne further aver that such acts, practices, and/or omissions were committed "intentionally" in that KBXX-FM specifically intended that Wayne act in detrimental reliance on

0010

the falsity or deception or in detrimental ignorance of the unfairness.

55.     Therefore, Wayne is entitled to recover multiple damages as provided by 17.50(b)(1) of the Texas Business and Commerce Code.

## VII. BREACH OF CONTRACT

56.     Based upon and incorporating the facts and claims above, Defendants KBXX-FM, Ujaama, Lil' Jon and TM breached their contracts with the Plaintiff.

57.     On or about July 14, 2003 Wayne entered into valid and legally executed contract with KBXX-FM. According to the terms of the contract, Wayne promised to pay KBXX-FM $10,000 in consideration for KBXX-FM's promise to advertise and promote the *CrunkFest* which was scheduled for August 24th 2003. Pursuant to the contract, KBXX-FM agreed to air promotional ads for thirty days leading up to *CrunkFest*. KBXX-FM also agreed to run a "Box Weekend Special". The promotions were never aired at the times specified in the contract and KBXX-FM never ran the "Box Weekend Special". Furthermore, KBXX-FM has failed to produce sworn affidavits of the dates and times that the *CrunkFest* ad were actually aired.

58.     Ujaama breached its contract with Wayne by deliberately violating the exclusivity clause of the contract and by having artists fail to appear and perform at *CrunkFest*. Most of the same Ujaama artists that were scheduled to perform in *CrunkFest* on August 24, 2003 entered into promotional agreements with local clubs and performance contracts for *HoodFest* to take place on September 21, 2001. Such contracts were in direct breach of the exclusivity clause of the *CrunkFest* contract. The exclusivity clause dictated that no other promotions or performance by the Ujaama artists would take place within a one hundred mile radius within 30 days of the event.

59.     CrunkFest headliner Lil' Jon also breached his contract with Wayne by failing to appear

0009

and perform at CrunkFest and causing it to be rescheduled.  Lil' Jon was paid $2,750.00 of the $15,000.00 for which he contracted in advance to perform as the headline artist of *CrunkFest* and failed to perform as contracted.

60.    Wayne also entered into a contract with TM as its exclusive authorized ticketing agent. Pursuant to the contract, Wayne paid TM $1,500 in consideration for its services. TM failed to perform according to the terms of the contract. TM failed to verify an accurate seating chart and present accurate daily reports of *CrunkFest* ticket sales.

61.    The above-described acts on Defendants' part caused Plaintiff substantial injuries and damages.

## VIII.  TORTIOUS INTERFERENCE WITH CONTRACT

62.    Based upon and incorporating the facts and claims above, KBXX-FM tortiously interfered with the contracts between Plaintiff and Defendant Ujaama.

63.    KBXX-FM made the contracts between Wayne and Ujaama more burdensome if not impossible to perform due to the breach of the exclusivity agreement. Pursuant to the Wayne-Ujaama agreement, Ujaama artists, Lil' Jon, Chingy, Ying Yang Twins, David Banner, T.I. Field Mob and Killer Mike all contracted to endorse *CrunkFest* and give live performances of their music at the *Crunk- the- Vote* event. Furthermore, the contracts between Wayne and the artists through Ujaama contained an exclusivity clause. Pursuant to the exclusivity clause, the Ujaama artists agreed that they would not perform, promote or appear at any other events within one hundred miles of the *CrunkFest* venue located at Texas Southern University within thirty days of *CrunkFest*. KBXX-FM had actual knowledge of the existence of the contract and of Wayne's interest in the contract, or KBXX-FM had knowledge of facts and circumstances that would lead a reasonable person to believe in the existence of the contract and Wayne's interest in it.

64.    KBXX-FM desired to cause the cancellation of the *CrunkFest*. KBXX-FM was

0008

substantially certain that the cancellation of *CrunkFest* would result as a consequence of its actions. KBXX-FM's actions caused Wayne to reschedule CrunkFest.

## IX. INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS

65. Based upon and incorporating the facts and claims above, KBXX-FM interfered with existing contractual relations between Wayne and Ujaama.

66. Wayne and Ujaama executed a valid and legally binding contract on July 3, 2003. As part of the agreement, Ujaama would provide Lil' John, Ying Yang Twins, Chingy, and other artists to perform at *CrunkFest*. The agreement contained an exclusivity provision precluding the artists from performing appearing at any event within 100 miles of Houston within 30 days of the *CrunkFest*.

67. Wayne informed KBXX-FM Account Associate Bernard Lee of the existence of the exclusivity agreement between Wayne and Ujaama artists. KBXX-FM nevertheless began promotions and advertising of *HoodFest* in violation of the exclusivity agreement. After receiving several cease and desist notices from both Wayne and Ujaama, KBXX-FM continued to arrange and promote Wayne artists for competing events, including *HoodFes*t, in violation of the exclusivity agreement.

68. In addition to the cease and desist notices, Steve Williams Administrator of MAMH's GOTV, one of the *Crunk-the Vote* sponsors, contacted KBXX-FM's Station Manager, Sales Director, Program Director and General Manager, Mark McMillan. McMillan assured Mr. Williams that all promotion of *HoodFest* by KBXX-FM would stop immediately. However, KBXX-FM continued to promote *HoodFest* Featuring the Ujaama artists that were under contract and subject to the exclusivity agreement with Wayne.

69. The successful promotion of the *Hoodfest* by KBXX-FM was the proximate cause of

0007

Ujaama's failure to perform at *CrunkFest*.   As a result of the continued promotion of the *HoodFest* featuring the Ujaama artists by KBXX-FM, the growing success of *HoodFest* ticket sales, and the inducement by KBXX-FM to cancel the *CrunkFest* performances, Ujaama made several attempts to renegotiate the artist contracts with Wayne. After the renegotiation attempts were unsuccessful, the artists failed to appear and perform at the *CrunkFest*.

## X. CONSPIRACY TO COMMIT TORTIOUS INTERFERENCE

70.     Based upon and incorporating the facts and claims above, Defendants KBXX-FM, TVT, and TM conspired to tortiously interfere with Wayne's contracts with Ujaama.

71.     KBXX-FM, TVT and TM, all conspired to fraudulently deceive Wayne and unlawfully undermine the *CrunkFest* event. The agreement among the entities to conspire is evident in the performance and promotional contracts between KBXX-FM, *HoodFest* Partners and TVT artists Lil' Jon and Ying Yang Twins and the sales agreement between KBXX-FM and TM.   In furtherance of the conspiracy, and at the behest of KBXX-FM, the TVT artists attempted to renegotiate the terms of the original contract with Wayne and threatened to cancel if they did not receive a full cash payment two hours before the show. Such demands directly contradicted the terms of the contract. As a result of the conspiracy between KBXX-FM, TVT and TM, the *CrunkFest* never took place.

72.     Under the advisement of KBXX-FM, TM, the *CrunkFes'st* exclusive computerized ticketing agent, furthered the conspiracy by failing to properly provide the accurate seating chart in the Arena and sold tickets for seats that did not exist. Wayne made several requests to TM to assemble an accurate seating chart, however TM never fulfilled such requests. In fact, Wayne took it upon itself to verify each and every seat at the Arena and to provide TM with an accurate seating chart. In spite of Wayne's efforts, TM never displayed the accurate seating chart and

0 0 0 6

continued to defraud the public by continuing to sell seats that did not exist from an outdated seating chart that TM knew to be inaccurate.

73.     Additionally, TM reported false and misleading daily reports of *CrunkFest* ticket sales to Wayne. KBXX-FM also induced TM to place sales graphic and hyperlinks for *HoodFest* under the promotions for *CrunkFest*, attempting to defraud the public into believing that the two events were in conjunction and to induce them to buy tickets for the *HoodFest* instead of the *CrunkFest*. Ultimately, KBXX-FM succeeded because Wayne was forced to reschedule *CrunkFest*.

## XI. FRAUD

74.     Based upon and incorporating the facts and claims above, KBXX-FM committed fraud pursuant to Texas Torts and Remedies Section 44.02.

75.     KBXX-FM's made a material misrepresentation to Wayne that it would promote the *CrunkFest* as a top priority at the station. Wayne would not have entered into the contract if it was aware of KBXX-FM's true intentions to undermine *CrunkFest*.

76.     KBXX-FM in fact never intended to promote and advertise *CrunkFest* in the manner in which it represented to Wayne because, on information and belief, it had a conflicting financial interest in *HoodFest*.

77.     KBXX-FM induced Wayne to contract with it even though KBXX-FM knew it would not promote and advertise *CrunkFest* because of its conflicting financial interest. In reliance on KBXX-FM's promise, Wayne expended additional resources to prepare for *CrunkFest* and did not contract with television stations that would have provided the necessary promotion needed to make *CrunkFest* successful.

78.     As a result of KBXX-FM's actions, Wayne suffered damages.

## XII. COMMON LAW FRAUD

0005

79.    Based upon and incorporating the facts and claims above, KBXX-FM committed common law fraud.

80.    Wayne and KBXX-FM had an agreement to promote and provide on air radio advertisements for *CrunkFest*. On information and belief, at the time that contract was formed KBXX-FM had a financial interest in *HoodFest* apart from any monies received for the advertisement of the event. KBXX-FM did not have a financial interest in *CrunkFest* other than the $10,000.00 paid by Wayne for the advertisement of the event.

81.    KBXX-FM then caused the breach of the exclusivity agreement in its successful effort to undermine *CrunkFest* by promoting its own event, *HoodFest*. KBXX-FM began promoting the *HoodFest* on Thursday, August 14, 2003 ten days before the date of the *CrunkFest*. KBXX-FM also stopped promoting *CrunkFest* to the benefit of *HoodFest* for its own financial gain.

## XIII. NEGLIGENT MISREPRESENTATION

82.    Based upon and incorporating the facts and claims above, KBXX-FM negligently misrepresented itself to Plaintiff.

83.    KBXX-FM misrepresented its intention to air *CrunkFest* promotions pursuant to the terms of the contract under which it would be paid $10,000 in promotion and advertisement fees by Wayne. KBXX-FM made the representation in the course of its business or in a transaction in which it has a pecuniary interest.

84.    KBXX-FM falsely informed Wayne that it would air the agreed advertisements at agreed times as well as a "Box weekend Special". KBXX-FM was never able to substantiate its assertions that the promotional ads were aired as agreed to in the contract with Wayne with sworn station affidavits. KBXX-FM General Manager, Mark McMillan also falsely represented that KBXX-FM's promotion of the *HoodFest* in violation of the exclusivity clause would cease

0004

immediately after a request was made by Steve Williams on Monday August 18, 2003. Furthermore Mr. McMillan assured Mr. Williams that the promotions for the *CrunkFest* would take "top priority" at the station. However, KBXX-FM continued to promote *HoodFest* throughout August 24, 2003, the day that *CrunkFest* was scheduled to take place.

85.     It was foreseeable that KBXX-FM's failure to promote *CrunkFest,* and by making the competing *HoodFest* the top priority at the station, would result in diminished tickets sales and ultimately the cancellation of the Ujaama artists that were scheduled to perform in *CrunkFest.*

86.     The above-described acts on Defendant's part caused Plaintiff substantial injuries and damages.

## XIV. JURY DEMAND

87.     Plaintiff hereby requests that a jury of its peers in Harris County, Texas, hear a trial of the above causes of action.

## XV. PRAYER

Because of the antitrust violations, deceptive trade practices, breach of contract, tortious interference, conspiracy, fraud and misrepresentation committed by the Defendants, directly or through its agents, it has been necessary for Plaintiff to retain the undersigned attorneys to represent him in these causes of action. Plaintiff has agreed to pay the undersigned attorneys reasonable attorneys' fees for the preparation and trial of the causes, and further for any appeal thereof should it become necessary.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendants be cited to appear and answer herein, and that on final trial, Plaintiff has judgment against Defendants for:

1.  Actual damages of at least $250,000.00, including lost profits;

2. Compensatory damages of at least $5,500,000.00 for the embarrassment, loss of reputation, and mental anguish;

3. Punitive damages in the amount of $50,000,000.00;

4. Treble damages pursuant to Section 17.50(b)(1) of the Texas Business and Commerce Code;

5. Reasonable attorney's fees, with conditional awards in the event of appeal;

6. Pre-judgment interest at the highest rate permitted by law;

7. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

8. Cost of Court; and

9. Such other further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by a proper amendment thereto.

Respectfully submitted,

PETER J. CLARKE
SBA 00797779
Fed ID 21397
6001 Savoy, Ste. 306
Houston, TX. 77036
Tel: (713) 339-3988
Fax: (713) 339-4669

ATTORNEYS FOR PLAINTIFF

OF COUNSEL:

0002

LAW OFFICE OF PETER J. CLARKE,
A Professional Corporation
6001 Savoy, Ste. 306
Houston, Tx. 77036
(713) 339-3988
(713) 3339-4669

0 0 0 1